DECISION
{¶ 1} Relator, Bernard Bodnar, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order exercising its continuing jurisdiction under R.C. 4123.52, and to reinstate his January 9, 2001 order that granted relator's application for permanent total disability compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission abused its discretion in exercising its continuing jurisdiction in this matter. Accordingly, the magistrate determined this court should grant a writ ordering the commission to vacate its March 9, 2002 order that purports to exercise the commission's continuing jurisdiction, and to reinstate its January 9, 2001 order that granted relator's application for permanent total disability compensation.
 {¶ 3} Both respondents, Shelly Sands, Inc. and the Industrial Commission, have filed objections to the magistrate's decision, contending the magistrate erroneously concluded the commission lacked a basis for exercising its continuing jurisdiction under R.C. 4123.52. The commission has continuing, but not unlimited, jurisdiction under R.C. 4123.52 to modify or change its prior orders. Among the bases for the commission's exercising its continuing jurisdiction is a clear mistake of law.State ex rel. B C Machine Co. v. Indus. Comm. (1992),65 Ohio St.3d 538, syllabus.
 {¶ 4} Here, the commission determined a clear mistake of law existed in the staff hearing officer's failure to identify the evidence in the record on which the hearing officer relied. SeeState ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481 (requiring the commission orders to "specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested"). Because, contrary to Mitchell, the staff hearing officer's order fails to identify the evidence on which the hearing officer relied in addressing relator's educational skills, the order presents a mistake of law that permits the commission to exercise its continuing jurisdiction.
 {¶ 5} Despite the staff hearing officer's failure to comply with Mitchell, the magistrate's decision suggests the omission is inconsequential because relator's high school transcript is the only evidence relating to relator's educational skills. As the commission, however, notes in its objections, the record includes other evidence bearing on the educational aspects of the non-medical factors pertinent to a determination of relator's application for permanent total disability compensation. Absent the staff hearing officer's identifying the evidence in the record on which the hearing officer relied, we are left to speculate about the evidence which may support the order, a situation Mitchell was designed to avoid. Accordingly, respondents' objections are sustained to the extent indicated.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts, and we adopt them as our own. For the reasons set forth in this decision, however, we reject the magistrate's conclusions of law. Instead, we conclude the Industrial Commission did not abuse its discretion in exercising its continuing jurisdiction, as the staff hearing officer's order contained a mistake of law in failing to identify the evidence on which the hearing officer relied. As a result, we deny the requested writ of mandamus.
Objections sustained; writ denied.
Bowman and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Bernard Bodnar, : Relator, : v. : No. 03AP-215 Industrial Commission of Ohio : (REGULAR CALENDAR) and Shelly Sands, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on September 16, 2003
Law Offices of Thomas Tootle Co., L.P.A., and Thomas Tootle, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
Hanna, Campbell Powell, LLP, and Lori A. Fricke, for respondent Shelly Sands, Inc.
 IN MANDAMUS {¶ 7} Relator, Bernard Bodnar, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order wherein the commission exercised its continuing jurisdiction under R.C. 4123.52 and thereafter denied his application for permanent total disability ("PTD") compensation, and ordering the commission to reinstate its January 9, 2001 order wherein the commission granted relator's application for PTD compensation.
 Findings of Fact {¶ 8} 1. Relator sustained two separate work-related injuries and his claims have been allowed as follows: "[88-25677] Fractured left ankle; Broken glasses; Cut nose and eye unspecified." "97-559059 — Contusion to the right knee; Aggravation of pre-existing osteoarthritis of the right knee."
 {¶ 9} 2. On March 1, 2000, relator filed an application for PTD compensation supported by the February 9, 2000 report of his treating physician, Dr. Richard S. Glass, who concluded as follows:
Our impression is that he has an aggravation of pre-existing of osteoarthritis of his right knee with persistent symptoms despite his total knee replacement and we feel these symptoms will continue and he will continue to have weak-ness and abnormal function of this right lower extremity. I feel that he is unable to engage in any sustained renumerative [sic] employment because of the injury and related impair-ments to his right knee. This also takes into consideration his age, education and work experience.
 {¶ 10} 3. Relator was also examined by Dr. Timothy J. Fallon who issued a report dated April 10, 2000. Dr. Fallon indicated that relator had reached maximum medical improvement ("MMI"), assessed a 29 percent whole person impairment, and concluded that relator would be capable of performing sustained remunerative work activity but only in a sedentary type of position.
 {¶ 11} 4. Relator was also examined by commission specialist Dr. John W. Cunningham who issued a report dated August 31, 2000. Dr. Cunningham concluded that relator had reached MMI and assessed a 22 percent whole person impairment. In conclusion, Dr. Cunningham stated as follows:
* * * This individual is employable in sustained remunerative employment. However, he is not employable in construction labor, as he was employed on both dates of injury and as he was last employed. This individual is employable as a truck driver without loading and unloading responsibilities. This is an individual who is able to operate a truck considering his left ankle injury on a continuous basis for many years prior to last working. Consequently, this individual is employable in sustained remunerative employment with permanent restric-tions. This individual is employable in at least some of the job duties that he performed on both dates of injury and also when last employed. The above expressed medical opinions are on the basis of the medical information currently available to this physician based upon medical information which is objectively supported. * * *
 {¶ 12} Dr. Cunningham completed an occupational activity assessment wherein he indicated that relator was unrestricted in his ability to sit, could stand for zero to three hours and could walk for three to five hours; could lift or carry between 20 and 50 pounds for zero to three hours; could push, pull or otherwise move between 20 and 50 pounds for three to five hours; and could rarely climb stairs and was precluded from climbing ladders. With regard to relator's right lower extremity, he could occasionally use foot controls; was precluded from crouching, stooping, bending, and kneeling; was unrestricted in his ability to handle objects; and was unrestricted in his ability to reach overhead, at waist and knee level but could only occasionally reach at floor level.
 {¶ 13} 5. An employability assessment report was prepared by Thomas P. Kinser, MS, CDMS, dated August 17, 2000. Based upon the medical reports of Drs. Fallon and Glass, Mr. Kinser concluded that relator was capable of sedentary employment, with no heavy use of his right lower extremity and no prolonged standing or walking. Mr. Kinser noted that relator had certain transferable skills including the ability to perform repetitive work, make generalizations, evaluations, or decisions based on sensory or judgmental criteria, attain precise set limits, tolerances and standards, apply common sense understanding to carry out instructions, perform the four basic arithmetic operations, calculate discount, interest, profit and loss, surfaces, weights, volumes, measures, and read instructions at the level for assembling model cars and airplanes. Mr. Kinser concluded as follows:
Therefore, based on the medical opinion of Dr.'s. Fallon and Glass (1-13 and 1-7-2000), the availability of jobs in the Belmont County area access to the Wheeling, West Virginia job market, federal and state funded job placement assistance, Mr. Bodnar is considered employable. It is to be noted that the claimant began a regular retirement in July 1999. If he decides not to pursue employment, then one would conclude that Mr. Bodnar continues to voluntarily remove himself from the labor market.
 {¶ 14} 6. An employability assessment report was prepared by Charles Loomis, MED, dated October 10, 2000. Based upon the medical report of Dr. Glass, Mr. Loomis concluded that relator was not employable. However, based upon the medical reports of Drs. Fallon and Cunningham, Mr. Loomis concluded that relator concurrently performed the following jobs: "Surveillance System Monitor[,] Order Clerk[,] Food and Beverage Preparer[,] Information Clerk." Assuming seventh to eighth grade academic abilities, Mr. Loomis concluded that relator could perform the following additional jobs: "Scheduler, Maintenance[,] Personnel Scheduler[,] Claims Clerk[,] Traffic Clerk[,] Dispatcher." Mr. Loomis concluded that relator's age would be a moderately limiting factor, that relator graduated from high school and that the basic academic abilities are reportedly retained, that his work history and construction and manufacturing traits would provide him with minimal job transferability, and that there is no evidence that relator would be incapable of having the academic potential to deal with seventh to eighth grade reasoning.
 {¶ 15} 7. Relator's application was heard before a staff hearing officer ("SHO") on January 9, 2001, and resulted in an order granting PTD compensation. The SHO discussed the medical reports of Drs. Glass and Fallon and concluded as follows:
Dr. Glass states claimant is permanently and totally disabled. Dr. Fallon states claimant is capable of only sedentary work. Mr. Loomis performed an employability assessment on behalf of the Industrial Commission, and taking into account the restrictions of Dr. Fallon stated his opinion that claimant could perform work as a clerk, a food and beverage preparer, as a surveillance system monitor, as well as other essentially clerical work. However, although claimant is a high school graduate, such occurred over 45 years ago and his academic performances was so lackluster as to create serious doubt about his fitness for intellectual-based clerical work. His restriction to sitting prevents him from performing food preparation work; and while it is true one can monitor surveillance systems in a seated position, such jobs also require standing and movement to investigate abnormal indications monitored which claimant is unable to do. Claimant's entire work experience has all been essentially in the construction field performing medium and heavy work that has not furnished him with any transferable job skills. Finally, claimant's age of 63 leaves him with insufficient remaining potential work life to make remedial training, and education in clerical work, a feasible option.
Accordingly, claimant is found to be removed from all sustained remunerative employment, and is held to be permanently and totally disabled.
Permanent total disability is awarded from the date of Dr. Glass' report, the earliest evidence of permanent total disability.
 {¶ 16} 8. On January 31, 2001, respondent Shelly Sands, Inc. ("employer"), filed a notice of appeal from the January 9, 2001 order which the employer indicated it received on January 12, 2001. The employer specifically challenged the commission's determination that relator's lackluster performance in high school is an indication of his inability to perform intellectual-based clerical work as not being supported by the record. Further, the employer challenged the SHO's determination that relator had no transferable work skills.
 {¶ 17} 9. The commission issued an interlocutory order on March 2, 2001, purporting to address the employer's request for reconsideration. The commission found that the employer had presented evidence of sufficient probative value to warrant adjudication of its request for reconsideration regarding the alleged presence of a clear mistake of law. Specifically, the commission noted that it has alleged that the January 9, 2001 order does not comply with State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, because the SHO did not specifically state which evidence was relied upon to assess relator's intellectual capacity.
 {¶ 18} 10. Thereafter, a hearing was held before the commission on December 11, 2001. The commission concluded that it had continuing jurisdiction for the following reasons:
It is the finding of the Industrial Commission that it has continuing jurisdiction under Ohio Revised Code 4123.52 to hear this matter, pursuant to State ex rel. Nicholls v.Indus. Comm. (1998)[,] 81 Ohio St.3d 454 and State exrel. B C Machine Shop v. Indus. Comm. (1992)[,]62 Ohio St.3d 538. The courts have held that the Industrial Commission has continuing jurisdiction where there is probative evidence of (1) New and changed circumstances subsequent to the initial order; (2) Fraud in the claim; (3) A clear mistake of fact in the order; (4) A clear mistake of law of such character that remedial action would clearly follow; (5) An error by an inferior administrative tribunal or subordinate hearing officer which renders the order defective.
It is found that the 01/09/2001 Staff Hearing Officer order granting permanent total disability contains a clear mistake of law. The order does not comply with State ex rel.Mitchell v. Robbins Meyers, Inc. (1983)[,]6 Ohio St.3d 481, because the Staff Hearing Officer did not specifically state what evidence was relied upon to assess the injured worker's intellectual capacity.
 {¶ 19} Thereafter, the commission denied relator's application for PTD compensation based upon the medical reports of Drs. Fallon and Cunningham and the vocational report prepared by Mr. Kinser.
 {¶ 20} Commissioner Gannon dissented on the basis that the employer's notice of appeal, which the commission treated as a request for reconsideration, had not been filed within the 14-day period required pursuant to commission resolution R98-1-03. Commissioner Gannon noted that the rule cited by the employer discusses appeals and not requests for reconsiderations and that, inasmuch as the employer's request was not timely, Commissioner Gannon voted to deny the request for reconsideration.
 {¶ 21} 11. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} Pursuant to R.C. 4123.52:
The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modifica-tion or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
 {¶ 24} In State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, 541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:
R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow FreightSystem, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State exrel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979),58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus.Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State exrel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988),39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel.Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85 * * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
 {¶ 25} In the present case, relator is correct in asserting that Commissioner Gannon correctly noted that the employer's appeal, which the commission treated as a request for reconsideration, was not timely filed pursuant to commission resolution R98-1-03. However, the untimeliness of the employer's request did not divest the commission of its discretion to exercise continuing jurisdiction. As R.C. 4123.52 provides, the commission has continuing jurisdiction over each case and may make such modification or change with respect to former findings or orders as, in the commission's opinion, is justified. Further, pursuant to State ex rel. Gatlin v. Yellow Freight System, Inc.
(1985), 18 Ohio St.3d 246, the commission has inherent power to reconsider its orders for a reasonable period of time absent statutory or administrative restrictions. The commission's resolution is a guideline used by the commission and does not supersede statutes and regulations. R.C. 4123.52 does not contain a 14-day limitation on the commission's ability to accept continuing jurisdiction over a case and reconsider a prior decision.
 {¶ 26} The only question which remains is whether the commission abused its discretion in exercising its continuing jurisdiction in the present case. Upon review of the SHO's order, this magistrate concludes that the commission did abuse its discretion in exercising its continuing jurisdiction. In the January 9, 2001 order, the SHO made certain statements regarding relator's academic performance and his intellectual abilities, specifically stating that "his academic performance was so lackluster as to create serious doubt about his fitness for intellectual-based clerical work." Relator's high school transcript is included in the record at page 27. In four years of high school, relator received one A, three Bs, five Cs, seven Ds, and four Fs. The A was in shop class and the Bs were in physical education. Relator's transcript was the only evidence of his "academic performance" contained in the record and supports the SHO's statement that it was "lackluster." In deciding Mitchell, the court's reasoning was two-fold: (1) claimants and employers alike are entitled to know the basis for the commission's decisions, and (2) reviewing courts should not have to search the commission's file for "some evidence" to support an order. WhileMitchell does require the commission to specify the evidence relied upon, here, there was only one piece of evidence upon which the SHO could have been relying since it was the only evidence on file on the issue. As such, this magistrate concludes that there was no "clear mistake of law" and the commission abused its discretion exercising its continuing jurisdiction in this case.
 {¶ 27} Based upon the foregoing, it is this magistrate's decision that relator has demonstrated that the commission abused its discretion in exercising its continuing jurisdiction and this court should grant a writ of mandamus ordering the commission to vacate its March 9, 2002 order and reinstate its January 9, 2001 order which granted relator's application for PTD compensation.